THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MYRIAM ZAYAS, | CASE NO. C24-1613-JCC |
| Plaintiff, | MINUTE ORDER |
| v. | |
| CITY OF SEATTLE, *et al.*, | |
| Defendants. | |

The following Minute Order is made by direction of the Court, the Honorable John C. Coughenour, United States District Judge:

On October 8, 2024, the Honorable Brian A. Tsuchida, United States Magistrate Judge, granted Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 4). The Clerk then entered Plaintiff's complaint (Dkt. No. 5), along with a motion to appoint counsel (Dkt. No. 6). Before considering the latter motion, the Court elects to screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii), which provides that it may be dismissed if it "fails to state a claim on which relief can be granted." *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). In addition, the Court must consider whether the complaint establishes the Court's subject matter jurisdiction, which includes a plaintiff's standing before the Court. *See* Fed. R. Civ. P. 12(h)(3).

According to the complaint, Plaintiff's son suffered a fatal fentanyl overdose. (Dkt. No. 5 at 2–4.) Plaintiff contends the death was due, in part, to the collective failure of the Seattle Fire

Department, Seattle Police Department ("SPD"), Harborview Medical Center ("Harborview"), and King County Metro ("Metro") to render timely assistance, which was pursuant to "an unwritten policy of not investigating injuries or death . . . associated with fentanyl use." (*Id.* at 1–2.) It further alleges that the policy effectively "discriminates against . . . African American males . . . [who] have been disproportionately harmed by the latest surge of overdose deaths." (*Id.* at 3.) As such, says the complaint, Defendants violated the Fourteenth Amendment's Equal Protection clause. (*Id.* at 1.) The named defendants are the City of Seattle, the University of Washington, and King County Metro Transit. (*Id.* at 1.) No individual actors are named. (*See generally id.*) The Court first addresses whether the complaint establishes the Court's subject matter jurisdiction.[1]

Federal question jurisdiction, a form of subject matter jurisdiction,[2] exists when a claim arises from the United States' Constitution, law, or treaties. 28 U.S.C. § 1331. State law claims can then attach so long as they are part of the same case or controversy. 28 U.S.C. § 1367; *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164, (1997). To establish this Court's jurisdiction, more than conclusory statements are required. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). The complaint must include *specific* facts that plausibly allege a federal claim. Plaintiff affirmatively asserts the following causes of action: wrongful death, medical malpractice, and gross negligence. (*Id.* at 4.) None of which are federal claims (as they are all based on state law). *See, e.g.*, *Putman v. Wenatchee Valley Med. Ctr., P.S.*, 216 P.3d 374, 378 (Wash. 2009); *Triplett v. Washington State Dept. of Soc. & Health Services*, 268 P.3d 1027, 1030 (Wash. Ct. App. 2012). Nevertheless, the complaint contends that 42 U.S.C. § 1983 forms the

---

[1] Federal courts are courts of limited jurisdiction—a complaint filed in this Court must establish its subject matter jurisdiction. *See Sandpiper Village Condo. Ass'n., Inc. v. Louisiana-P. Corp.*, 428 F.3d 831, 841 (9th Cir. 2005).

[2] Diversity jurisdiction, which is not asserted here, exists when plaintiff(s) and defendant(s) are citizens of different states and the amount in controversy is more than $75,000. 28 U.S.C. § 1332.

MINUTE ORDER
C24-1613-JCC
PAGE - 2

1  basis of this Court's jurisdiction, (*see* Dkt. No. 5 at 1), based on alleged Equal Protection

2  violations, (*see id.* at 1, 3, 4). Therefore, the Court will construe[3] Plaintiff's complaint to also

3  assert a cause of action brought pursuant to 42 U.S.C. § 1983.

4        Importantly, here, because Plaintiff files her claim on behalf of her son, she must assert

5  that she herself has standing to pursue the relief she seeks. *Lujan v. Defs. of Wildlife*, 504 U.S.

6  555, 560 (1992). To do so, she may bring her claim either (1) on behalf of her son's estate[4] or (2)

7  based on her individual standing as a parent.[5] Here, Plaintiff has not asserted standing (1) as a

8  representative of the estate nor (2) based on her liberty interest.

9        Had the complaint established standing, the Court would then assess whether it states a

10 claim for relief. To do so, it must contain sufficient factual matter, taken as true, to state such a

11 claim plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009). This requires factual

12 allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v.*

13 *Twombly*, 550 U.S. 544, 555 (2007). Conclusory allegations of law and unwarranted factual

14 inferences will not do. *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition,

15 for purposes of a § 1983 claim, Plaintiff must plead specific facts demonstrating that a person

16 acting under the color of law violated Plaintiff's federal right. *See West v. Atkins*, 487 U.S. 42, 48

17 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Again, specific, nonconclusory

18 allegations are required. *See, e.g.*, *Griffin v. Los Angeles Cnty.*, 2021 WL 4706996, slip op. at 3

---

[3] This is based on the Court's liberal construction of a *pro se* complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[4] State survival statutes control a § 1983 claim when the statutes are not inhospitable to or adversely affect the policies underlying § 1983. *Robertson v. Wegmann*, 436 U.S. 584, 594 (1978); *see also Moreland v. Las Vegas Metro. Police*, 159 F.3d 365, 369–70 (9th Cir. 1998) (applicable state laws permit survival actions under § 1983). Specifically, Washington's general survival statute allows for personal representatives of the decedent to bring causes of action against another person or persons. RCW 4.20.046; *Smith v. Pierce Cnty.*, 218 F. Supp. 3d 1220, 1225 (W.D. Wash. 2016).

[5] § 1983 claims may be raised by parents if they are deprived of their liberty interest in the companionship and society of their child. *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010); *Bishop v. City of Buckley*, 2024 WL 1701949, slip op. at 6 (W.D. Wash. 2024).

MINUTE ORDER
C24-1613-JCC
PAGE - 3

1  (C.D. Cal. 2021) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 n.3).

2      Plaintiff's complaint states nothing more than conclusory allegations. It does not allege
3  specific conduct in violation of the Fourteenth Amendment by specific individuals. (*See*
4  *generally* Dkt. No. 5.) For example, Plaintiff does not name the individuals from the SPD,
5  Harborview, or Metro allegedly responsible for her son's death anywhere in the complaint. (*See*
6  *generally id.*) The only actor identified is the Metro driver for the number 1 line who allegedly
7  neglected to contact 911 or attend to Plaintiff's son as he suffered a fentanyl overdose. But this
8  could be a variety of individuals. (*See id.* at 2.)

9      Moreover, Plaintiff's complaint fails to identify a specific "policy" or "custom"
10  consistent with the alleged unconstitutional conduct. (*See generally id.*) Indeed, because Plaintiff
11  seeks to impose municipal liability, she must identify a "policy" or "custom" that caused her
12  injury. *Bd. of the Cnty. Comm'rs of Bryant Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citing
13  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)).[6] Here, however, it is
14  not clear what specific policy, practice, or custom supports Plaintiff's *Monell* claims. The
15  complaint asserts that SPD did not respond to an overdose call, which was a "policy [that]
16  discriminates against [people such as her son as a] protected class of African American males."
17  (Dkt. No. 5 at 3.) But this is no more than a conclusory statement. Plaintiff must provide
18  Defendants with notice of a *specific* policy to satisfy her pleading requirements. For instance,
19  Plaintiff does not (a) point to decisions of a duly constituted legislative body or other officials,
20  (b) show that the practice at issue is sufficiently widespread as to have the force of law, nor (c)
21  demonstrate a direct causal link between a "policy" or "custom" and the deprivation of federal
22  rights. *Brown*, 520 U.S. at 404–05. As such, Plaintiff's complaint merely describes, in a

---

[6] Such a policy can include a government's lawmakers' decision, acts of policymaking officials, and persistent, widespread practices. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But again, allegations of the injurious policy must be specific and nonconclusory. *See, e.g.*, *Munywe v. Peters*, 2021 WL 5514810, slip op. at 10 (W.D. Wash. 2021); *Keyes v. Leland*, 2016 WL 4150000, slip op. at 6 (E.D. Wash. 2016).

MINUTE ORDER
C24-1613-JCC
PAGE - 4

conclusory manner, a discriminatory "policy" without identifying said municipal "policy" that may have caused the injury. *Id*.

Further, even if Plaintiff had named specific actors or a specific policy, none of the conduct, at least as alleged, constitutes an Equal Protection violation. Plaintiff asserts that her son is a part of a protected class of African American males who have been disproportionately harmed by a surge in opiate deaths because of "unequal public health response to the opioid crisis." (Dkt. No. 5 at 3.) To state an Equal Protection claim based on disparate impact (versus intentional discrimination), which appears to be Plaintiff's intent, the complaint must allege that state actions disparately impacted an identifiable group of people, and these actions must evince discriminatory purpose. *See Washington v. Davis*, 426 U.S. 229, 242 (1976); *Pers. Adm'r of Mass. v. Feeney* 442 U.S. 256, 272 (1979). Disparate impact on a certain group does not immediately infer a discriminatory motive, except when "a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action." *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

Plaintiff's allegations fall short of this standard. Plaintiff has stated that African American men "have been disproportionately harmed by this latest surge of overdose deaths due in part . . . [by the] unequal public health response to the opioid crisis." (Dkt. No. 5 at 3.) However, aside from this conclusory claim, Plaintiff has not established that SPD, Harborview, or Metro responded to the opioid overdoses with discriminatory purpose nor with a clear discriminatory pattern. (*See generally id.*)

Lastly, under the qualified immunity doctrine, government officials[7] are barred from civil liability when their conduct does not violate clearly established statutory or constitutional rights in the eyes of a reasonable person. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). And none of

---

[7] Courts have granted bus drivers, police officers, and state-run medical providers qualified immunity. *See e.g., Horton by Horton v. City of Santa Maria,* 915 F.3d 592, 602 (9th Cir. 2019); *Little v. Kitsap Transit,* 2008 WL 5113443, slip op. at 7 (W.D. Wash. 2008); *Reed v. Kariko*, 2024 WL 3309233, slip op. at 2 (9th Cir. 2024).

Plaintiff's allegations even begin to identify a "clearly established" constitutional right. Therefore, at least as pleaded, qualified immunity would bar Plaintiff's claims.

Based on the foregoing, the Court DECLINES to serve Plaintiff's complaint. Instead, the Court GRANTS Plaintiff leave to file an amended complaint[8] curing the above-noted deficiencies within 30 days after the date this order is issued. If an amended complaint is not timely filed or if it fails to correct the deficiencies identified, the Court will dismiss this action under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

The Clerk is DIRECTED to send a copy of this order to Plaintiff.

DATED this 24th day of October 2024.

<u>Ravi Subramanian</u>
Clerk of Court

<u>s/Kathleen Albert</u>
Deputy Clerk

---

[8] An amended pleading operates as a complete substitute for an original pleading. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, any amended complaint must clearly identify the individual Defendant(s), constitutional or federal statutory claim(s), and the specific facts connecting each Defendant to each claim.